UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:**   IN CHAMBERS ORDER GRANTING MOTION TO DISMISS [211][212]

## I.   INTRODUCTION

On September 8, 2010, this Court issued an order dismissing Plaintiffs' First Amended Complaint. *See Doe v. Nestlé, S.A.*, 748 F. Supp. 2d 1057 (C.D. Cal. 2010) ("2010 Order"). The Court found that Plaintiffs failed to adequately allege either the *actus reus* or *mens rea* necessary to sustain their complaint. *Id.* at 1111. The Court also found that corporations cannot be sued for aiding and abetting under the Alien Tort Stature ("ATS"). *Id.* at 1144. Further, the Court dismissed Plaintiffs' state law claims and claims premised on the Trafficking Victims Protection Act. *See id.* at 1113, 1120–24.

On September 4, 2014, the Ninth Circuit reversed this Court in *Doe I v. Nestlé USA, Inc.*, 766 F.3d 1013, 1016–18 (9th Cir. 2014) ("Nestlé"). The Ninth Circuit reversed this Court's *mens rea* ruling and the finding that corporations cannot be sued for aiding and abetting under the ATS. *Id.* at 1023, 1026. The Ninth Circuit further considered the Supreme Court case *Kiobel v. Royal Petroleum Co.*, 133 S. Ct. 1659 (2013), which was decided after this Court's 2010 Order. The Ninth Circuit allowed Plaintiffs an opportunity to amend their complaint on the issues of extraterritoriality in light of *Kiobel* and *actus reus*. The Plaintiffs did so.

The instant motions to dismiss are premised on two main arguments: that Plaintiffs' claim is deficient because it seeks an impermissible extraterritorial application of the ATS, and because it fails to

:   
Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

allege the requisite *actus reus*.[1] This Court finds that the complaint seeks an impermissible extraterritorial application of the ATS, and thus the Court does not reach the merits of Defendants' remaining arguments.

**II.    The Alien Tort Stature**

The Supreme Court in *Kiobel* applied the presumption against extraterritoriality to the ATS, and further stated that "where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption." *Kiobel*, 133 S. Ct. at 1669 (citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 2883-2888 (2010)).[2] In *Nestlé*, the Ninth Circuit found that *Kiobel* put forth a new "touch and concern" test specific to ATS claims. *See Nestlé*, 766 F.3d at 1028. The Court found it imprudent to "attempt to apply and refine the touch and concern test" set forth in *Kiobel*. *Id*. The Court further stated that *Morrison* is "informative precedent for discerning the content of the touch and concern standard," but that *Kiobel* did not ultimately incorporate *Morrison*'s "focus" test. *Id*. Further, the Ninth Circuit called the touch and concern test "amorphous". *Id*.

In *Mujica*, another ATS case decided five weeks after *Nestlé*, the Ninth Circuit majority did not cite *Nestlé*. *See generally, Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014). However, the *Mujica* Court also had no need to fully develop the "touch and concern" test since it found that "Plaintiffs' claims exclusively concern conduct that occurred in Colombia." *Id*. at 592 (finding the allegations of domestic conduct "speculation" that was "not an adequate basis on which to allow Plaintiffs' claim to go forward."). The Court looked at whether there was a "nexus between Plaintiffs' claims and this country". *Id*. at 594. Presumably, this decision left undisturbed *Nestlé*'s conclusion that *Kiobel* did not incorporate *Morrison*.[3]

*Nestlé*'s conclusion that the *Morrison* focus test did not apply to ATS claims is in irreconcilable conflict with subsequent Supreme Court and Ninth Circuit cases.[4] In *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Court further elaborated on the presumption. Referring to

---

[1] Defendants also argue that Plaintiffs lack Article III standing and that the complaint makes improper "lump allegations" against Defendants as a whole without distinguishing which Defendant committed which action.
[2] The *Kiobel* Court provided no further explanation of this language, other than adding "mere corporate presence" is not enough. *See Kiobel*, 133 S. Ct. at 1669.
[3] The *Mujica* Court cited to *Morrison* only for the proposition that U.S. corporate citizenship is not sufficient, on its own, to displace the presumption against extraterritoriality. *See Mujica*, 771 F.3d at 595.
[4] When an intervening Supreme Court case "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable", a district court must follow the Supreme Court. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). Further, "the issues decided by the higher court need not be identical in order to be controlling." *Id*.

:
_____    _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

*Morrison* and *Kiobel*, the Court stated that "[t]wice in the past six years we have considered whether a federal statute applies extraterritorially." *Id.* at 2100. It then plainly set forth the two-step framework for extraterritoriality issues:

> *Morrison* and *Kiobel* reflect a two-step framework for analyzing extraterritoriality issues. At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction. If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*Id.* at 2101. This Court interprets *RJR* according to its plain language, which is in irreconcilable conflict with the Ninth Circuit's holding in *Nestlé*. Whereas the Ninth Circuit held that *Kiobel* did not incorporate *Morrison's* "focus" test, the *RJR* Court clarified that "[b]ecause 'all the relevant conduct' [in *Kiobel*] regarding those violations 'took place outside the United States,' [] we did not need to determine, as we did in *Morrison,* the statute's 'focus.'" *Id.* (internal citations and quotation marks omitted). The Court reads this sentence as declaring that *if* some relevant conduct did occur in the United States, the *Kiobel* Court *would* have "needed" to determine the ATS' focus. Further, *RJR* expressly put forward its "two-step framework for analyzing extraterritoriality issues". *See id.* Even if the *Kiobel* Court was unclear about adopting *Morrison's* "focus" test, this passage from *RJR* is extremely clear: the two-step framework applies.

In *Trader Joe's*, relying on *RJR*, the Ninth Circuit said: "We determine whether *any* statute, including the Lanham Act, reaches foreign conduct by applying a two-step framework." *Trader Joe's Company v. Hallatt*, 835 F.3d 960 (9th Cir. 2016) (citing *RJR*, 136 S.Ct. at 2101) (emphasis added). Thus, the Ninth Circuit expressly held that *RJR*'s two-step framework applies to any statute. The word "any" should be given its ordinary meaning: this is the approach the Ninth Circuit takes for every statute, whether conduct-regulating or jurisdictional, including the ATS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

Plaintiffs somehow characterize *RJR* as supporting the Ninth Circuit's decision in *Nestlé*. *See* dkt. 222, Pl. Opp'n, at 20. Plaintiffs argue that *RJR* "specifically stated that *Kiobel* is different, and it was not the ATS' focus that determined 'relevant conduct.'" *Id.* Plaintiffs argue that "*RJR*'s dictum thus affirms *Nestlé*'s conclusion that *Kiobel* and *Morrison* may have a relationship of informative precedent, but they are different tests." *Id.* The Court disagrees. The *RJR* Court paired *Kiobel* with *Morrison* to create the "two-step" framework. Contrary to Plaintiffs' assertion, *RJR* does not specifically state the ATS is different. Certainly, *RJR* did not say that "it was not the ATS' focus that determined 'relevant conduct'"—or make any decision on the ATS' focus—because the *RJR* Court recognized there had been no reason to do so. *See RJR*, 136 S. Ct. at 2101. If Plaintiffs' argument was adopted, this Court would essentially be holding that a multi-factored test explicitly set down by the Supreme Court can be cut and parsed based on which factors the Supreme Court ultimately relies on in its analysis. Plaintiffs cite no authority that a Supreme Court decision can be trimmed down in such a manner.

Therefore, this Court will apply the "focus" test to the claims at issue.[5] However, as explained below, even if the Court were to find *RJR* and *Trader Joe's* to be reconcilable with *Nestlé*, it would still dismiss Plaintiffs' claims based on the Ninth Circuit's development of the "touch and concern" test.

### III. THE ATS FOCUS TEST

Since the Ninth Circuit disavowed the "focus" test, this Court will rely on out-of-circuit precedent which provides a clear framework for applying the "focus" test to ATS cases. The "focus" of the ATS is the "conduct that violates international law, which the ATS 'seeks to "regulate"' by giving federal courts jurisdiction over such claims." *See Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 197 (5th Cir. 2017) (quoting *Morrison*, 561 U.S. at 267); *see also Mastafa v. Chevron Corp.*, 770 F.3d 170, 186 (2d Cir. 2014) (finding the "focus" of the ATS to be "the conduct of the defendant which is alleged by plaintiff to be either a direct violation of the law of nations . . . [or] aiding and abetting another's violation."). The conduct at issue here, forced child labor, is indisputably a violation of international law. *See Nestlé*, 766

---

[5] This Court found support for its conclusion from the Fifth Circuit case *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184 (5th Cir. 2017). In this case, the Fifth Circuit acknowledged a circuit split between the Ninth (finding *Kiobel* did not incorporate *Morrison*), the Second (finding it did), and the Eleventh (using an "amalgamated" approach). *Id.* at 194–95. The Fifth Circuit then stated it had "not yet entered the jurisprudential fray surrounding *Kiobel*" but, instead of doing so, concluded that *RJR*—"which was issued after the foregoing circuit court opinions"—was determinative. *See id.* at 195. The dissent agreed that "*RJR Nabisco* sets forth a two-step framework." *Adhikari*, 845 F.3d at 208 (Graves, J., dissenting) (dissenting from the analysis under that framework).

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

F.3d at 1022. Further, "aiding and abetting a crime is itself a crime." *Doe I v. Nestlé USA, Inc.*, 788 F.3d 946, 948 (9th Cir. 2015) (denying rehearing *en banc*) (Bea, J. dissenting); *see also Nestlé*, 766 F.3d at 1023–27 (analyzing aiding and abetting liability under the ATS); *Mastafa*, 770 F.3d at 185. Thus, the "focus" in this case is the conduct of Defendants that aided and abetted forced child labor in Côte d'Ivoire.

This Court should then isolate the "relevant conduct" constituting Defendants' aiding and abetting of forced child labor. *See Mastafa*, 770 F.3d at 185 ("a district court must isolate the 'relevant conduct' in a complaint."); *see also Nestlé*, 766 F.3d at 1028 ("*Morrison* may be informative precedent for *discerning the content* of the touch and concern standard.") (emphasis added). The Court should then decide if "all the relevant conduct took place outside the United States." *See Kiobel*, 133 S. Ct. at 1669; *see also Mastafa*, 770 F.3d at 182 (asking whether the presumption is "self-evidently dispositive" or whether further analysis is required) (citing *Morrison*, 561 U.S. at 266). If so, the case is dismissed. *See, e.g., Kiobel*, 133 S. Ct. at 1669. If *some* relevant conduct took place in the United States, it must "touch and concern" the United States with "sufficient force to displace the presumption against extraterritoriality." *See id.*; *see also Mujica*, 771 F.3d at 591; *Mastafa*, 770 F.3d at 185–86.

## IV. ANALYSIS

For the first step of the "focus" test, isolating relevant conduct, this Court looks to five specific actions Defendants took that Plaintiffs allege touch and concern the United States with sufficient force to displace the presumption: (1) U.S. based decision-making; (2) the provision of funds originating in the U.S.; (3) the U.S. companies furnishing "additional supplies" and "extensive training" to cocoa farmers in Côte d'Ivoire; (4) publishing statements in the U.S. that Defendants are against child slavery; and (5) lobbying efforts in the U.S. against a bill that Plaintiffs allege "would have required Defendants' imported cocoa to be 'slave free,'" *see* dkt. 222, Pl. Opp'n, at 17.[6]

### A. Whether Some Conduct Occurred Domestically

In *Kiobel*, a foreign defendant engaged in actions abroad that injured then-foreign plaintiffs (plaintiffs moved to the United States after their injuries accrued). *See Kiobel*, 133 S. Ct. at 1662–63. Thus, all relevant conduct occurred outside the United States. *Id.* at 1669. However, "[i]t is a rare case . . . that lacks *all* contact with the territory of the United States." *Morrison*, 561 U.S. at 249 (emphasis

---

[6] Further, the Court will consider Defendants' U.S. citizenship as a factor, but not dispositive. *See Mujica*, 771 F.3d at 594.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

in original). This is not a rare case. The conduct of Defendants shows at least *some* contact with the United States, and so further analysis is required.

### B. Further Analysis

The Court finds that the five actions listed above are insufficient to displace the presumption.

#### 1. Allegations (1), (2), and (3)

The first three actions—(1) U.S. based decision-making; (2) provision of funds originating in the U.S.; and (3) furnishing additional supplies and training from the U.S.—are all synonymous with the fact that Defendants are U.S. based corporations. These are all activities that ordinary international businesses engage in, and thus do not "touch and concern" the United States with any more force than Defendants' mere citizenship status.

This Court notes that more than ordinary business conduct was required in all cases in which the presumption was displaced. *Compare Al Shimari v. CACI Premier Technology, Inc.*, 758 F.3d 516, 530–31 (4th Cir. 2014) (presumption displaced when defendants "encouraged" their employees in Abu Ghraib to commit acts of torture and "covered up" the misconduct), *and Krishanti v. Rajaratnam*, No. 2:09-CV-05395 JLL, 2014 WL 1669873, *10 (D.N.J. Apr. 28, 2014) (presumption displaced when defendants created corporations in the United States in order to directly fund an overseas terrorist organization and were "a source for money" to bribe U.S. officials), *and Doe v. Exxon Mobil Corp.*, 2015 WL 5042118, *14 (D.D.C. July 6, 2015) (presumption displaced when U.S. located defendants "planned and authorized" the deployment of foreign military personnel and gave them supplies directly used to commit the underlying violations), *with Doe I v. Cisco Sys., Inc.*, 66 F. Supp. 3d 1239, 1246 (N.D. Cal. 2014) (finding the presumption not displaced when defendants planned and sold a "Golden Shield" security system with knowledge that it would facilitate the Chinese government's human rights abuses), *and Doe v. Drummond Co.*, 782 F.3d 576, 598 (11th Cir. 2015) (finding presumption not displaced when U.S. corporation made funding and policy decisions domestically, but the specific decisions to aid human rights abuses were made in Colombia), *and Adhikari*, 845 F.3d at 198–99 (presumption not displaced for direct liability under ATS even when defendant "transferred payments to [underlying perpetrators] from the United States, using New York Banks" because plaintiffs "failed to connect the alleged international law violations to these payments" and also finding leave to amend to add claims for aiding and abetting would be futile).

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

The presumption has also been displaced when the tortious conduct itself was planned in the United States. *See, e.g.*, *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 322 (D. Mass. 2013) (Defendant planned and managed from the United States a "campaign of repression" against LGBTI individuals in Uganda); *Exxon Mobil Corp.*, WL 5042118 at *1 ("Exxon exercised substantial control over the activities of these soldiers, including approving and planning specific operations and deployment locations.")

Plaintiffs' allegations in this case represent ordinary business conduct, and there are no allegations that Defendants planned or directed the use of forced child labor from the United States—or that Defendants planned or directed the underlying violations at all. Instead, Defendants here had legitimate business relations with overseas parties. The fact those parties then used the profits of these business relations to engage in extraterritorial violations of the law of nations does not displace the presumption. *See, e.g.*, *Drummond*, 782 F.3d at 598 (finding the presumption not displaced despite noting that "funding and policy decisions" were made in United States).[7]

### 2. Allegation (4): Publishing Statements in the U.S.

Plaintiffs argue that Defendants published in the U.S. "specific, false assurances to consumers which beguiled them into continuing to support Defendants and the slave-holding farms." Pl. Opp'n, at 16. Plaintiffs are referencing the publications by Defendants which state they are against child labor and hold their cocoa suppliers to high standards, including a prohibition against child labor. *See* Second Amended

---

[7] The Plaintiffs rely on two cases, *Mastafa* and *Licci*, in which they argue the presumption was displaced merely due to funds being paid to perpetrators abroad that originated in the United States. These cases are distinguishable, and neither of them displace the presumption by merely relying on ordinary business conduct. In *Mastafa*, defendants created a banking scheme to facilitate illegal payments to Saddam's regime which violated the United Nations' sanctions. *Mastafa*, 770 F.3d at 195. The court found that since defendants "attempt[ed] to skirt the sanctions regime", and that the "financing arrangements in New York allowed the oil purchasers to conceal the true nature of the oil purchase", the presumption was sufficiently displaced. *Id.* at 190. Thus, this case relied on more than ordinary business conduct to displace the presumption.

In *Licci*, the defendants made substantial financial contributions to Hezbollah through New York banks. *Licci v. Lebanese Canad. Bank, SAL*, 834 F.3d 201, 215 (2d Cir. 2016). These banking services directly funded rocket attacks in which the plaintiffs were injured. *Id.* As in *Mastafa*, these actions independently violated the law. *See id.* ("the bank violated various terrorist financing and money laundering laws in carrying out the transfers"). Again, this case relied on more than ordinary business conduct to displace the presumption. Plaintiffs in the case before this Court do not allege that Defendants engaged in any similar independently illegal activity in furnishing funds to the underlying perpetrators.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

Complaint ("SAC") ¶¶ 51-61. The Court disregards these allegations because they fail basic pleading standards, and fail to be "relevant conduct" under the "focus" inquiry.

All of Plaintiffs' injuries occurred between 1994 – 2001. SAC ¶¶ 70–75. The publications referenced in the complaint are either not dated, or occurred in 2005 and 2006. *See* SAC ¶¶ 52–59. Thus, the complaint fails to plausibly allege how statements made years after Plaintiffs' injuries could have aided and abetted such injuries. The allegation that these were "false assurances" is a claim of fraud, yet the pleadings do not satisfy Rule 9(b). There are no allegations explaining how these statements were fraudulent. Further, the allegation that these publications beguiled consumers is conclusory.

As a second, independent reason to disregard these claims, they fail to be "relevant conduct" under the "focus" test. The first step in the "focus" analysis is to isolate "relevant conduct". *See Mastafa*, 770 F.3d at 185–86. The "focus" of the ATS is the "conduct that violates international law." *See Adhikari*, 845 F.3d at 197 (quoting *Morrison*, 561 U.S. at 267). Here, the Court must isolate conduct that aids and abets the direct perpetrators of forced child labor in Côte d'Ivoire. Thus, this Court need not scrutinize *all* conceivable domestic conduct of a defendant that mentions or references child labor. There are no allegations that these publications helped the perpetrators commit the underlying human rights abuses. Plaintiffs cite no law that U.S. publications made to inform U.S. consumers of international human rights abuses aid and abet those overseas human rights abuses.[8]

### 3. Allegation (5): Lobbying Efforts

Finally, Plaintiffs argue that Defendants' conduct "touches and concerns" the United States because "Defendants spent millions of dollars within the United States lobbying to destroy a bill that . . . would have required Defendants' imported cocoa to be 'slave free'". Pl. Opp'n, at 17.[9] Plaintiffs' allegations are not "relevant conduct" under the "focus" test because Plaintiffs do not plausibly plead how these lobbying efforts aided and abetted the underlying perpetrators. The cases Plaintiffs rely on are

---

[8] The Court could imagine a scenario in which the publications prevented a loss of revenue to Defendants that would have decreased Defendants' purchases from the underlying perpetrators, harming the revenues of the farms that use forced child labor and, presumably, decreasing their need for child laborers. There are two problems with this scenario: (1) it was not plead, and (2) it ultimately relies on the same allegations, discussed and dismissed above, that since finances to the perpetrators originated in the U.S. the presumption should be displaced.

[9] The bill would have given $250,000 to the FDA to create a "slave free" label that the FDA could then put on chocolate products. H. Amend. 142, H.R. 2330 (2001) (in 147 Cong. Rec. H3781 (daily ed. June 28, 2001)).

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

distinguishable because they describe conduct beyond the ordinary course of business. In *Rajaratnam*, the court considered as one of four factors that defendants used money to *bribe* United States officials in an attempt to remove a terrorist organization from the U.S.'s official list of Foreign Terrorist Organizations. *Rajaratnam*, WL 1669873 at *10. In *Mastafa*, Chevron and BNP created a complex scheme to make illicit surcharge payments that skirted the U.N. sanctions regime. *See Mastafa*, 770 F.3d at 190. There are no allegations in this case that Defendants acted inappropriately in their lobbying efforts.[10] Lastly, Plaintiffs rely on *Al Shimari* for the argument that a claim touches and concerns the United States when "Congress had indicated a statutory will to prohibit the harm in question." *See* Pl. Opp'n, at 17 (citing *Al Shimari*, 758 F.3d at 531). Even if the Court accepted this proposition, it hurts Plaintiffs' case. Congress did not adopt the bill that would have allowed the FDA to label chocolate as "slave free". Instead, Congress' "will" was to let the Harkin-Engel Protocol control. Lastly, even if these lobbying efforts are considered "relevant conduct", such conduct without more would not "touch and concern" the United States with sufficient force to displace the presumption.[11]

The Court does not rely on policy in reaching its conclusions. *See Mujica*, 771 F.3d at 596 (stating that policy arguments in analyzing the ATS are "not for us" to consider) (citing *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185, 1191 (11th Cir. 2014)). Nonetheless, the Court notes that entertaining Plaintiffs' allegations here could chill corporate speech due to fear that lobbying efforts would open the door to liability for any international human rights abuse that a plaintiff speculates a proposed bill could have prevented.[12] Even worse, relying on corporate social responsibility programs as "relevant conduct" would also chill corporations from creating these programs. Corporations would be incentivized to allow

---

[10] Though in briefing Plaintiffs' counsel states that Defendants "dissembled" Congress, there are no actual allegations in the complaint that Defendants misled Congress in any way.

[11] Further, the Court notes a similar timing issue to these allegations. The injuries of five of the six Plaintiffs occurred before 2001, when the bill was proposed in the House of Representatives. The sixth Plaintiff left the forced labor camps in 2001. Though theoretically the passage of this bill could have had some impact on preventing harm to the sixth Plaintiff (presuming an expeditious passage and immediate implementation), Plaintiffs' allegations do not lead to this plausible inference.

[12] Defendants argue these lobbying efforts are protected by the First Amendment. *See, e.g.*, Def. Cargill Reply, at 14. The Court need not decide such First Amendment issues here, *see Lively*, 960 F. Supp. 2d at 329 (deferring First Amendment issue for summary judgment), but notes that Defendants make a strong case that lobbying would be protected. *See United States v. Wallace*, 531 F.3d 504, 506 (7th Cir. 2008) ("People are entitled to lobby for favorable laws; the first amendment protects self-interested campaigning."). Plaintiffs make the argument, however, that "criminal aiding and abetting is not protected by the First Amendment." Pl. Opp'n, at 17 n.4 (quoting *Lively*, 960 F. Supp. 2d at 329). Also, this Court notes that the Ninth Circuit relied on these same lobbying activities in its analysis of *mens rea* in *Nestlé*, 766 F.3d at 1025.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

human rights abuses to occur without shedding light on the issue or trying to combat it out of fear they will displace the presumption and be held responsible.

**C. "Touch and Concern" Test**

Even if the Court found that *RJR* and *Trader Joe's* were reconcilable with *Nestlé,* the Court would still find Plaintiffs' allegations insufficient. In such a case, the Court would follow the legal precedent of the Ninth Circuit in *Nestlé* and *Mujica*. However, it is unclear how the "amorphous" "touch and concern" test would significantly differ from the "focus" analysis. *Nestlé* did not expound on the "touch and concern" test other than finding that *Morrison* would be "informative precedent for discerning the content of the touch and concern standard" and that the test is "amorphous". *See Nestlé*, 766 F.3d at 1028. The *Mujica* Court had no need to fully develop the "touch and concern" test since it found that "Plaintiffs' claims exclusively concern conduct that occurred in Colombia." *Mujica*, 771 F.3d at 592 (finding the allegations of domestic conduct "speculation" that was "not an adequate basis on which to allow Plaintiffs' claim to go forward."). However, the Court looked at whether there was a "nexus between Plaintiffs' claims and this country", and found that the only such "nexus" was the fact that defendants were U.S. corporations. *Id.* at 594. The Court found that U.S. corporate citizenship was a factor, but not sufficient. *Id.* at 595. Finally, the *Mujica* Court firmly instructed courts to not consider policy in their analysis. *Id.* at 596 ("'the determination of foreign policy goals and the means to achieve them is not for us . . . The federal courts cannot exercise jurisdiction under the ATS beyond the limits that Congress has prescribed, no matter how well-intentioned our motives for doing so.") (citing *Cardona*, 760 F.3d at 1191). The "nexus" language in *Mujica* and the instruction in *Nestlé* that "*Morrison* may be informative precedent *for discerning the content* of the touch and concern standard" (emphasis added) both sound very similar to "focusing" on the "relevant conduct" underlying the aiding and abetting claim. Even presuming, however, this Court considers a broad factual analysis examining all the circumstances around the claims, as Plaintiffs suggest (Pl. Opp'n, at 9 (citing *Al Shimari*, 758 F.3d at 527–28)), the Court would still find Plaintiffs' complaint lacking.

This Court need not look much farther than *Mujica* to determine that the allegations here fail to meet the "touch and concern" test. The *Mujica* Court looked for a "nexus" between Plaintiffs' claims and the United States. *Mujica*, 771 F.3d at 594. Despite the fact that defendants were U.S. corporations, alleged to have made actions and decisions in the United States which included a contract made in the U.S.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

in which defendant AirScan would provide security for defendant Occidental in Colombia, the Court dismissed the claims. *Id.* at 596.[13]

In this case, Plaintiffs do not allege much more than the claims easily dismissed in *Mujica*. Even considering Defendants' lobbying efforts, this is not the type of conduct that would displace the presumption, since holding as much would displace the presumption for nearly all, if not all, international corporations. *See Morrison*, 561 U.S. at 266 (the presumption is not a "craven watchdog" that "retreat[s] to its kennel whenever *some* domestic activity is involved in the case,") (emphasis in original). Plaintiffs ask this Court to further consider that Defendants are very large corporations. *See* Pl. Opp'n, at 19 (describing Nestlé USA as "one of the largest food and beverage companies in the United States" and Cargill as "one of the largest private corporate providers of food and agricultural products and services in the country"). Yet Plaintiffs cite no other case, and this Court finds none, in which the *size* of the U.S. based corporation is a relevant factor under any ATS test.

Thus, the Court finds that even considering all domestic factors, Plaintiffs' allegations are essentially that Defendants are U.S. corporations (that, unsurprisingly, provide legitimate funds and supplies to their operations overseas) and that Defendants had "general corporate supervision" over subsidiaries in Côte d'Ivoire. *See Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015) ("Allegations of general corporate supervision are insufficient to rebut the presumption against extraterritoriality and establish aiding and abetting liability under the ATS."). These allegations do not "touch and concern" the United States with sufficient force to displace the presumption.

### D. Leave to Amend

Again, the Court need look no further than *Mujica* to dismiss this case without leave to amend. "This is not a case in which the parties have had no opportunity to respond to an intervening change in Supreme Court law." *Mujica*, 771 F.3d at 593. In *Mujica*, plaintiffs were able to respond to *Kiobel* through a reply brief in which they devoted 15 pages to *Kiobel's* touch and concern test, and oral argument "held *eleven months* after *Kiobel* was decided." *Id.* (emphasis in original).

---

[13] Plaintiffs sought leave to amend, likely to allege the similar "financial or managerial connection between the corporate facilities in our country and the [extraterritorial] events," *id.* at 619 (Zilly, J., concurring in part and dissenting in part), that Plaintiffs allege here. But the Court found such an amendment would be futile. *Id.* at 593 (finding amendment futile despite "acknowledge[ing] that *Kiobel* worked a significant change in the legal prerequisites for an extraterritorial ATS claim, and that such intervening changes in the law often warrant granting parties leave to amend.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-5133-SVW-MRW | Date | March 2, 2017 |
|---|---|---|---|
| Title | *John Nestlé, et al. v. Nestlé, S.A., et al.* | | |

    In this case, Plaintiffs were given a much greater opportunity. They amended their complaint to account for *Kiobel* and had full briefing, including supplemental briefs, since *Kiobel*. Plaintiffs also filed their SAC after *RJR*. Thus, this Court does "not believe that granting Plaintiffs leave to amend would serve any purpose." *See Mujica*, 771 F.3d at 593 (citing *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995) ("Futility of amendment can, by itself, justify the denial of ... leave to amend.").

**V.    CONCLUSION**

    For the foregoing reasons, the motion to dismiss is GRANTED without leave to amend. The prevailing party shall submit a proposed judgment consistent with this order.

 

Initials of Preparer     PMC